In re Daniel J. CZECHOWICZ, Debtor.

Donald Young, Beatrice Young, Plaintiffs,

v.

Daniel J. Czechowicz, Defendant.

Bankruptcy No. 02–17497 K.
Adversary No. 03–1086 K.

United States Bankruptcy Court, W.D. New York.

Nov. 3, 2006.

Patrick M. Balkin, Esq., Lockport, NY, for Plaintiff.

Matthew P. Pynn, Esq., Lockport, NY, for Debtor.

## OPINION AND ORDER

MICHAEL J. KAPLAN, Bankruptcy Judge.

This dispute began pre-petition and was removed to this Court from State Court.

On April 22, 2004, this Court conducted a trial regarding the Defendant/Debtor's *counterclaim* against the Plaintiff. The

Chapter 7 Trustee had separately settled the Chapter 7 Estate's claim against the Plaintiff and the Plaintiff's claims against the Debtor. This is likely to be a "surplus money" case; hence the standing of the Debtor to seek damages on his own behalf. As importantly, the Debtor had almost no debt other than Plaintiff's initial claims. This case was filed because of the Plaintiff's pursuit of the Debtor in State Court. This explains why the Debtor seeks nearly $200,000 in actual damages for 1999, but seeks only $50,000 for his anticipated profits for year 2000; almost all of his 1999 costs had been fully paid when the Plaintiff tortiously put him out of farming, long prior to the bankruptcy filing.

The Plaintiff appeared without counsel in that 2004 trial. After trial, the Court found that the Plaintiff had absconded with key assets of the Debtor's farming operation, causing the ruination of the Debtor's crops and requiring the Debtor to cease farming.

The Plaintiff retained counsel after the ruling after trial but before the Court computed the award, and after the Court awarded $158,466.45 to Czechowicz, Young's counsel perfected an appeal. On review, the District Court affirmed on liability, but reversed on damages because the Debtor's counsel had not served an F.R.Civ. P. Rule 26 Notice upon the then-pro se Plaintiff, advising him of the evidence that would be offered on the subject of damages.

The re-trial on damages was concluded on April 28, 2006, this time with counsel on both sides.

Written closing arguments were submitted to the Court in August of 2006. The following constitutes the Court's Rule 52 findings, conclusions and decision, regarding the matter of damages, as directed by the United States District Court for the Western District of New York (Arcara, C.J.).

Because trial and decision involved only the counterclaim, it is cumbersome to refer to the parties as Plaintiff and Defendant. Instead the parties will be referred to by name. Young has been found liable to the Debtor, Czechowicz, and this Opinion and Order addresses damages only.

Because Young put Czechowicz out of farming in mid-season of the year 1999, with crops in the fields and with fields ready for planting, it is difficult to determine what profits those crops would have brought. This is particularly so here because this was Czechowicz's first full crop. As a new, inexperienced farmer in 1997 and 1998, he had not made any profit. In 1997 he did not yet have a pesticide license and so suffered extra expenses in hiring-out those treatments. In 1998 he lost his crop to adverse weather. And in 1999 (the year of the tort), he reported *di minimis* farm sales.

In the year at issue, 1999, he had added more acreage to planting, had no adversities, and had various crops in the ground and was preparing to plant other crops, when Young absconded with critical equipment, leaving Czechowicz with crops that became ruined, and with tilled land that could not be planted.

So to prove his damages, Czechowicz offered three types of evidence: (1) The eyewitness account of a neighboring farmer as to the existence of Czechowicz's corn crop and the quality of his corn crop at the time Young absconded with the necessary equipment; (2) his own testimony as what his plans were to harvest and sell the existing crops and to plant others; and (3) various publications, some official and some not, addressing average crop yields and their proceeds in the locality in that year.

Young offered no evidence at all for the Court to contrast to such evidence. Rather, he relied on (1) attempting to impeach Czechowicz's evidence (other than the eyewitness testimony of the neighboring farmer who testified that Czechowicz's corn crop was the "best corn he ever tasted"), and (2) Czechowicz's tax returns from 1997–1999 demonstrating that Czechowicz had never made any money as a farmer. (Czechowicz's farming enterprise was a side-line to his full-time job at a Buffalo printing plant.)

As to Czechowicz's own testimony, Young pointed out prior, inconsistent deposition testimony by Czechowicz (in the pre-petition state court litigation brought by Young) regarding how many acres of various crops had actually been planted. And he attacked by cross-examination only, the feasibility and projected costs of Czechowicz's plans for the harvest and sale of his various crops, and for the planting of other crops. As to the publications offered by Czechowicz, Young attacked their relevance, reliability and proper use and interpretation: In particular, he attacked the non-official publication, provided by a seed dealer, upon which Czechowicz relied in determining the planting dimensions (space between seeds and between rows of seeds) in order to accomplish the published, anticipated yields.[1]

Young could have offered evidence that such anticipated yields were overly optimistic (if such were the case), but did not. Young could have offered evidence that the official compilations of average prices obtained in the region were incorrect (if such were the case), but did not. Young could have offered evidence as to what the labor and other costs would actually have been in excess of Czechowicz's plans for the

harvest (if such would have been the case), but did not.

In fact, Young's entire defense (regarding damages) lay in an effort to establish that none of Czechowicz's evidence had any probative value or any weight in light of the fact that Czechowicz had never made money as a farmer.

 In relying entirely upon this approach, Young walks the very fine line established by the United States Supreme Court in the case of *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–65, 66 S.Ct. 574, 90 L.Ed. 652 (1946). That case involved an unlawful conspiracy in the distribution of new motion pictures. And the sole question before the Supreme Court was whether the movie theaters that had been injured by that conspiracy had provided sufficient evidence to support the jury verdict that they had suffered a loss of earnings in excess of $120,000 in each of a given five-year period. The Court set forth governing principles as follows:

> [Where tortious acts have] precluded ascertainment of the amount of damages more precisely ... the jury could return a verdict for the plaintiffs, even though damages could not be measured with the exactness which would otherwise have been possible.

> In such a case, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act on probable and inferential as well as (upon) direct and positive proof." [Case citations omitted.]

---

1. This was deemed evidence not as to the truth regarding yield, but rather as the basis upon which Czechowicz planted his crops, and now estimates their value.

Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.

Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.

The most elementary conceptions of justice and public policy require that the wrongdoers shall bear the risk of the uncertainty which his own wrong has created.... That principle is an ancient one ... and is not restricted to proof of damage in antitrust suits, although their character as such is frequently to call for its application. In cases of collusion ... and in cases of confusion of goods ... the wrongdoer may not object to the plaintiff's reasonable estimate of the cause of injury and of its amount, supported by the evidence, because not based on more accurate data which the wrongdoer's misconduct has rendered unavailable. And in cases where a wrongdoer has incorporated the subject of a plaintiff's patent or trademark in a single product to which the defendant has contributed other elements of value or utility, and has derived profits from the sale of the product, this Court has sustained recovery of the full amount of *defendant's* profits where his own wrongful action has made it impossible for the plaintiff to show in what proportions he and the defendant have contributed to the profits.... [Emphasis added.]

The constant tendency of the Court is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights. [Case citation omitted.]

And so Young would seem to argue, in accordance with the principles thus enunciated by the Highest Court, that any award that this fact finder might make would be an impermissible "verdict based on speculation or guesswork." On the other side of the fine line, however, is the fact that this fact finder may "make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly," and this fact finder is allowed "to act on probable and inferential as well as upon direct and positive proof." 327 U.S. at 264, 66 S.Ct. 574.

Similarly, in attempting to implicate Czechowicz's other problems in life apart from losing his farm (the break-up of his relationship with his girlfriend, an unrelated back injury that led to a period of disability, and the loss of his full-time job in the bankruptcy of his employer), Young echoes the kind of arguments made in the case of *Doralee Estates, Inc. v. Cities Service Oil Company*, 569 F.2d 716 (2d Cir. 1977). In that case landowners were injured by oil that the defendant knew was seeping from the defendant's land onto the plaintiff's land. The defendant argued that the plaintiff "failed to prove how much of its claimed diminution in that property value was attributable to [the] seepage. [The defendant further suggests] that other pollutants such as sewage, discharge from another petroleum plant, and automobile exhausts and leakage contributed to [the plaintiff's] damages." *Id.* at 720–21. The Second Circuit stated "we think that [the defendant] overstates plaintiff's burden. When a defendant's tortious acts are of a nature which preclude precise ascertainment of damages, the jury may make 'a just and reasonable estimate of the damage based on relevant data and render its verdict accordingly.'" *Id.* at

721 (Citing the Supreme Court's decision in *Bigelow,* and other cases as well).

This writer has presided in dozens of farm cases, and has no doubt that the *profit potential* for most cash crop farms in this locale is speculative until the crops are in and sold. But the fact that *we cannot know* with certainty that Czechowicz would have made the type of year–1999 profits he claims *is the consequence of Young's intentional tort,* and Young may not benefit from that tortious act. The Court must use whatever competent and admissible evidence Czechowicz offered. As quoted above, the Court is to "find some way in which damages can be awarded where a wrong has been done." All of Czechowicz's evidence has been ruled competent, relevant and admissible (at least for limited purposes). And, the cumulative weight of the evidence is more than "nothing." Young, for his part, has offered precisely "nothing" regarding the crops and anticipated crops in question.

 As this Court ruled in its August 24, 2004 decision, intentional tort cases are different from other cases. So long as the *fact of damage* is *not* speculative, then the fact that the *amount* of damage *is* speculative does not preclude an award. That Young damaged Czechowicz by means of intentional tort—the tort of theft of essential equipment—is "law of the case" here. The Court finds that the "fact of damages" is not speculative, because Czechowicz had good crops in the ground and also land ready to be planted. Consequently, the determination of the amount of damages may permissibly rest in "a just and reasonable estimate, based on relevant data."

Young has offered in *evidence* no relevant data (rather than argument) to contrast with Czechowicz's evidence, and so this fact finder makes a "just and reasonable estimate," as follows:

The Court has carefully examined the evidence, and fully adopts, as its own Rule 52 Findings of Fact, Czechowicz's representations as contained in his written "Summation," with certain exceptions as set forth below.

### CORN

As to corn, the crop was in the ground and was hearty. The only "speculation or guesswork" is as to the costs of spraying and harvesting. The anticipated yield and proceeds are "reasonable estimates" based on "relevant evidence." Because of "speculation and guesswork," the Court reduces the request by 20%, and awards $73,440.

### HAY

As to hay, the Court finds damages in the amount of $18,663.75 for the loss of the second cutting.

### WHEAT

As to winter wheat and resulting straw, 47 acres were prepared to be planted. The Court reaches a "just and reasonable estimate" of $20,000 in damages.

### YEAR–2000 LOST PROFITS

As to lost profits for the year, the court finds that $50,000 is a "just and reasonable estimate, based on relevant data."

### PUNITIVE DAMAGES

 Although Czechowicz's original counterclaim did not seek an award of punitive damages, he sought leave to amend the Counterclaim, to conform to the evidence adduced at trial, *after* this Court's ruling on damages was vacated and remanded for a new trial. That Motion was granted, and Young was given additional time to conduct further discovery as a consequence.

At the new trial, Young's examination of Czechowicz established that there may have been a basis upon which Young might have thought that he was within his rights to take the equipment—there is no dispute about the fact that there had been a give-and-take between the two about Czechowicz leasing from Young, rather than buying, the equipment that Young took back from Czechowicz. In eliciting such evidence, Young does not attack the "law of the case," but instead seeks to mitigate the dollar amount of the "punishment." Whatever fine line Young seeks to walk here in that regard falls for two reasons. First is the fact that it was upon Young's own testimony at the first trial that this Court found that Young's conduct was "shocking to the conscience of the court." That finding is, in the Court's view, also "law of the case." But even if it is not "law of the case," that mitigating theory has now been offered only in argument, not in testimony by Young. For all the Court knows, Young is as committed to "Frontier Justice" today as he was at the first trial when he testified, under oath, to the effect that Czechowicz's cessation of payments for the equipment was "theft," and so he had a right to "steal" the equipment back. He left no doubt in the Court's mind then that he would do it again tomorrow. (As we know, failure to pay a debt is "breach of contract," not "theft.")

■ This Court noted after the first trial that the days of the Wild West are long done. The place to resolve disputes is a court of law. Had Czechowicz come home to find Young trespassing and stealing the equipment, there may well have been a tragic disturbance of the peace. Such conduct must be deterred. The U.S. Supreme Court has recognized that "indifference to or reckless disregard for the

health and safety of others" is an "aggravating factor" in punitive damages cases.[2]

And it must also be noted that at that re-trial on damages, Young and his counsel had an advantage that few litigants have. He not only had seen Czechowicz's case laid-out in full, on the record in the first trial, but had also seen this Court's findings about the case, and those of the reviewing Court. It is on that basis that this Court denied, prior to re-trial, Young's Motion to Dismiss premised on Czechowicz's failure to serve a formal Rule 26 Disclosure upon Young's new counsel. Young and his new counsel had Czechowicz's whole case. They had every conceivable iota of *substance*, but not in Rule 26 *form*. (When the District Court previously sent this matter back to this Court, it did so because before the first trial Young, who was then *pro se*, was possessed of neither the substance nor the form addressed by Rule 26.) This Court is commanded by Rule 1, that the Rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action." F.R.Civ.P. 1.

Not a scintilla of evidence was offered by Young on re-trial as to the value of the crops and the crop year at issue. Not even Young's own testimony. The Court does not criticize that choice. It may be that any further truthful testimony by Young, particularly on cross-examination, might not have served Young's own cause, in which case, his very capable counsel has done the best he can. (Young would have been well-advised to have hired him before the first trial.) This fact finder concludes that Young stands by his testimony in the first trial, that in his view, he could "steal" the equipment "back."

---

2. *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 1592, 134 L.Ed.2d 809 (1996); *State Farm v.* *Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1521, 155 L.Ed.2d 585 (2003).

On the other hand, Young is himself not in the business of selling farms and equipment. So far as the Court knows, this is an isolated incident.

But Young seems unable to admit error, based on his decision not to recant his prior testimony or express remorse for his decision to "steal" the critical equipment back. And so in light of the case of *Gore* and *BMW* and in light of all of the above, punitive damages are awarded in the amount of $50,000.

## OTHER ARGUMENTS

The Court has considered all of Young's other arguments and Motions and finds them to be without merit.

The Court especially notes the effort by Young at re-trial to establish, through cross-examination of Czechowicz, that it was Czechowicz's personal problems with his girlfriend, and loss of his job in the bankruptcy liquidation of his employer F.N. Burt, that bankrupted him, not Young's actions.

Trite phrases are trite because they are often true. And so now some trite phrases. The Court is of the view that the question of which particular "straw broke the camel's back" is not to be resolved by holding that the particular straw that was added to the camel's back by intentional tort is of no compensable moment. This writer sees thousands of cases each year. Multiplied by 15 years on the Bench, that is a great many cases. And in most of those cases, life has been tough for the debtor. "If it's not one thing, it's another," in their lives, in another trite phrase. Even in contract law, there is recognition of "special damages," far-reaching damages that flowed from a breach of contract, but the amount of which might not have actually been known to the breaching party at the time of the breach. See 36 N.Y.Jur.2d *Damages* §§ 41,42.

And in the final trite phrase, it is the tale of "for want of a nail, a kingdom was lost." Czechowicz testified that the loss of the farm was instrumental in the loss of his "family." And here we have a tort that was *intentional*, not a decision to default on a contract or even a negligent act. An intentional tort visits upon the tortfeasor "such immediate consequential injuries as, according to the common experience of humankind, are likely to, and do in fact, result from such act." not simply the "foreseeable" consequences. See 36 N.Y.Jur.2d *Damages* § 56. A punch to the face of a stranger who is a wage-earner might cost him or her a few days' pay and the cost of an X-ray. A punch to the face of a stranger who is a performance artist might cost a performance that costs a tour that costs a career. The performance artist and her tour might have been a "flop" anyway. But that can never be known after the punch that cost the performance. Maybe the artist had other problems. Maybe the punch was a "mercy killing" to a career that would never happen. But the fact of uncertainty does not inure to the benefit of the one who punched. See *Bigelow*, above.

In sum, Czechowicz might have been a very successful farmer or a flop. It is because of *Young's* unlawful actions that we will never know.

Importantly, this case is essentially a two-party dispute in which Czechowicz filed for relief here in the face of Young's pursuit of Czechowicz in State Court. Czechowicz had few debts, but was driven to this Court by Young's pursuit of a judgment over and above his unlawful self-help. And so, there is no doubt in this Court's mind that Young "drove" Czechowicz into bankruptcy. (See the introductory paragraphs to this Decision.)

## CONCLUSION

The Clerk shall enter money judgment against Young and in favor of Czechowicz

in the amount of $212,103.75,[3] and close this Adversary Proceeding, subject, of course, to Appeal.

SO ORDERED.

---

**3.** In the pre-reversal computation of damages, Young argued that damages could not possibly exceed the purchase-price of the farm. This argument is fallacious for three reasons: (1) It is "law of the case" that the purchase price of this farm, $160,000 in 1997 was artificially depressed by Young's prior encumbrance of the land to farming only (apparently a "T.D.R.") (Transfer of Development Rights) from which Young derived other value; and so the price that Czechowicz paid was not "fair market value" of land that was not otherwise encumbered, and (2) Czechowicz put his own, non-farm income into trying to make a successful farm, thereby enhancing the actual value of the farm, and (3) the combination of the above two factors enhanced the potential of the farm to generate substantial farming profits, a stream of income, that made the purchase of the farm a better deal for Czechowicz than Young might have contemplated when he priced the farm at $160,000 in 1997. In light of Young's intentional tort, valuation is Young's problem, not Czechowicz's problem.